United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 3, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 03-30214
Summary Calendar

---

MANJIT S KANG,

      Plaintiff-Appellant,

              versus

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY; LOUISIANA STATE
UNIVERSITY DEPARTMENT OF AGRONOMY,

      Defendants-Appellees.

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 00-CV-906-C-M-1

---

Before HIGGINBOTHAM, EMILIO M. GARZA and PRADO, Circuit Judges.

PER CURIAM:[*]

    Appellant Manjit S. Kang appeals the district court's grant of
Appellee's motion for summary judgment on his employment
discrimination and hostile work environment claims. For the reasons
stated below, we AFFIRM the district court.

I.

    Since 1986, Kang has worked as a professor in the Department

---

    [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of Agronomy at Louisiana State University ("LSU"). In 1996, Kang filed a claim with the Equal Employment Opportunity Commission ("EEOC"), alleging that LSU had discriminated against him when it rejected his application to become Department Head of the Department of Agronomy. LSU selected another faculty member, a white man, for the position, and Kang believed he had been overlooked because he was of East Indian descent. On September 30, 1997, Kang filed a second claim with the EEOC, alleging that LSU retaliated against him after the filing of his first claim of discrimination. Shortly thereafter, he filed his first suit in district court, raising claims of discrimination and retaliation, but this suit was subsequently dismissed on summary judgment.[1]

On December 4, 2000, Kang filed the instant suit in district court. Kang claimed that he had been subjected to additional retaliation, complaining of five specific acts. First, in April 1999, he received a poor performance evaluation from Freddie Martin, the Head of the Department of Agronomy. Second, while he was out of the country on a lecturing assignment, he was "written up" by Appellee for "unacceptable conditions" in one of his research areas. Third, he received a less-than-average pay raise of 3% in July, 1999, making him the lowest paid professor in the department. Fourth, Appellee failed to nominate him for a teaching award, even though he had been nominated in previous years.

---

[1] *See Kang v. State of Louisiana*, 229 F.3d 1147 (Table) (5th Cir. 2000), *cert. denied* 531 U.S. 1126 (2001).

2

Finally, the Department Head "unfairly and unjustly" criticized him at a faculty meeting on January 14, 2000 in front of his peers.

## II.

The district court concluded that Kang could not make out a prima facie case of retaliation under Title VII of the Civil Rights Act of 1964[2] and granted summary judgment for Appellee because none of the acts Kang complained of constituted "ultimate employment acts."[3]  We find no fault in the district court's conclusion.

To state a claim of retaliation under Title VII, plaintiff must demonstrate: "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action."[4] In *Mattern v. Eastman Kodak Co.*, we concluded that only "ultimate employment decisions" - decisions relating to "hiring, granting leave, discharging, promoting, and compensating" - satisfy the second prong of this test.[5] To satisfy this standard, the action complained of must "have more than a 'mere tangential effect on a possible future ultimate employment

---

[2] 42 U.S.C. § 2000e-3(a).

[3] *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997) ("'Ultimate employment decisions' include acts 'such as hiring, granting leave, discharging, promoting, and compensating.'").

[4] *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir.2001) (*quoting Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir.1996)).

[5] *Mattern*, 104 F.3d at 707.

decision.'"[6] Thus, "'interlocutory or mediate' decision[s] which can lead to an ultimate decision" are insufficient to support a prima facie case of retaliation.[7]

Under this standard, none of the actions that Appellant complains of, even if true,[8] qualify as "ultimate employment decisions." Our decisions reject the proposition that his first complaint - that he received a poor performance evaluation - qualifies as an adverse employment decision.[9] Similarly, the other actions allegedly taken by Appellee - failing to nominate him for a teaching award, unjustly criticizing him in front of his peers at a faculty meeting, and writing him up for not keeping his research area clean - do not "constitute 'adverse employment actions' because of their lack of consequence."[10]

Kang's final allegation, however, is a closer question. Kang claims that, in July 1999, he was given a less-than-average pay

---

[6] *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir.2001) (*quoting Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir.2000)).

[7] *Mattern*, 104 F.3d at 708 (5th Cir. 1997).

[8] For purposes of our review of the district court's grant of summary judgment, we accept as true Appellant's allegations. *See Casey Enterprises v. American Hardware Mutual Insurance Co.*, 655 F.2d 598, 601-02 (5th Cir. 1981). Appellee, of course, denies that Kang's filing of discrimination charges in any way affected their interaction with him.

[9] *Mattern*, 104 F.3d at 708.

[10] *Id.*

4

raise, causing him to be the lowest paid professor in his department. In *Fierros v. Texas Department of Health*, we explained that a denial of a pay increase can be an "ultimate employment action," despite our suggestion in *Mattern* to the contrary.[11] In the present case, however, it is undisputed that Appellant did receive a pay raise and that his raise was both substantial and larger than that received by some of his colleagues.[12] Although we have never explained precisely when denials of pay raises constitute ultimate employment decisions, under the circumstances of this case, we cannot say that Kang has suffered an adverse employment action.

Appellant candidly admits that our prior decisions compel this conclusion. He argues, however, that our approach to Title VII retaliation cases is unduly restrictive and asks that we endorse the broader rule adopted in some other circuits.[13] Indeed, we have ourselves noted that "the continuing vitality of the 'ultimate employment decision' doctrine is questionable in the light of"

---

[11] 274 F.3d 187, 193 (5th Cir. 2001) ("In cases since *Mattern*, we have held that a denial of a pay increase and similar actions are 'ultimate employment decisions.'").

[12] Kang admits that he received a raise of 3%. Others on the LSU faculty received raises ranging from 0% to 7%.

[13] *See, e.g., Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998); *Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir.1996); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984-86 (10th Cir. 1996); *Wyatt v. City of Boston*, 35 F.3d 13, 15-16 (1st Cir.1994); *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir.1987).

recent Supreme Court decisions.[14] Nonetheless, "[i]t is well-established in this circuit that one panel of this Court may not overrule another" unless the prior decision "'is overruled, expressly or implicitly, by either the United States Supreme Court or by the Fifth Circuit sitting en banc.'"[15] Accordingly, we decline Kang's invitation to alter our approach to Title VII retaliation claims.

## III.

In addition to his claim of retaliation, Kang contends that the district court erred in dismissing his claim that Appellee's actions created a "hostile work environment." To satisfy the requirements of a claim for hostile work environment, however, a plaintiff must demonstrate that an employer's discriminatory actions were "sufficiently severe or pervasive that they . . . alter[ed] the conditions of employment and . . . create[d] an abusive working environment."[16] The actions that Kang complains of,

---

[14]*See Felton v. Polles*, 315 F.3d 470, 486-87 (discussing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)); *see also Watts v. The Kroger Co.*, 170 F.3d 505, 510 n.4 (5th Cir. 1999) (expressly declining to reach the question whether *Burlington*'s definition of "tangible employment actions" is identical to *Mattern*'s definition of an "adverse employment action").

[15] *Central Pines Land Co. v. United States*, 274 F.3d 881, 893 (5th Cir. 2001) (quoting *United States v. Kirk*, 528 F.2d 1057 (5th Cir. 1976)).

[16] *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591 (5th Cir. 1995).

while potentially inappropriate, do not satisfy this standard.

IV.

Because none of the actions on which Kang bases his retaliation claim rises to the level of an "ultimate employment decision," he has failed to make a prima facie showing of retaliation. He has also failed to demonstrate that the Appellee's actions were pervasive or severe enough to create a hostile work environment. For these reasons, the judgment of the district court below is AFFIRMED.