# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-10219

AUTUMN K. BROWN,

Plaintiff – Appellant,

v.

LIBERTY MUTUAL GROUP, INCORPORATED,

Defendant – Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**

April 10, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CV-1196

Before DENNIS, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Plaintiff–Appellant Autumn Brown ("Brown") filed this suit alleging employment discrimination, hostile work environment, retaliation, and interference with leave benefits after she resigned from her position as a lead sales representative for Defendant–Appellee Liberty Mutual Group ("Liberty Mutual"). The district court determined that Brown had offered insufficient

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-10219

evidence to support her claims and granted summary judgment for Liberty Mutual. We agree and will AFFIRM the district court's decision.

## I.

The pertinent facts are largely undisputed, but where they differ we construe the facts and inferences in the record on appeal in the light most favorable to Brown. *See Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Brown began working as a sales representative for Liberty Mutual on October 18, 2004. She performed very well and was promoted to lead sales representative. As lead sales representative, Brown received the assistance of a sales associate, although this benefit was contingent upon Brown meeting certain sales goals.

When Brown notified her supervisor, Lynn Peters ("Peters"), of her pregnancy on January 11, 2011, Peters told Brown that she had never had a pregnant person in her office before and that it would be a new experience for her. Shortly thereafter, Peters began to question Brown's sales performance and admonished Brown that she risked losing the assistance of a sales associate if Brown failed to meet her sales expectations. After Brown missed work due to a pregnancy-related health issue, Peters suggested that Brown take leave under the Family and Medical Leave Act ("FMLA"). Brown, however, declined to take leave at that time.

During the first week of January 2011, Brown was selected for an audit of her insurance sales by an auditor who was unaware of Brown's pregnancy. Peters was not involved in the decision to audit Brown. The auditor discovered a number of insurance policies in which the information that Brown had entered did not match the information provided by the policyholders. The auditor thereafter asked Peters to look into the discrepancies. On February 14, 2011, Peters told Brown to come to a meeting, which Brown expected to be a routine discussion between her and Peters about an insurance policy that

Brown had sold.  When she arrived in the conference room, however, Brown found Peters, Peters's supervisor, and an HR representative, who asked Brown a series of questions regarding her sales practices.  Brown became overwhelmed and left the meeting before it was complete.  The meeting resumed the next day, and Brown received no disciplinary action as a result of the audit.

From February 18 through 27, 2011, Brown went on a previously scheduled vacation to South Africa.  She did not return to work on February 28, 2011, however, because she was not feeling well due to stress.  On recommendations from her therapist and doctor, she requested and received short-term disability and medical leave under the FMLA.  On April 15, 2011, before the end of her medical leave, Brown resigned from her position with Liberty Mutual.

Approximately one year after resigning, Brown filed the instant suit, alleging that Liberty Mutual had subjected her to pregnancy-based discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq*.  Additionally, she alleged that Liberty Mutual had interfered with her leave rights in violation of the FMLA.  Brown claimed that she had been constructively discharged from her position when she resigned.

Thereafter, Liberty Mutual filed a motion for summary judgment on all of Brown's claims.  The district court granted Liberty Mutual's motion, holding that Brown had failed to support prima facie cases for any of her claims because she did not suffer an adverse employment decision, the "harassment" she alleged was not severe or pervasive, and there was no evidence that Liberty Mutual interfered with her FMLA benefits.  This timely appeal followed.

Brown's evidence, viewed in the light most favorable to her, cannot establish that she suffered an adverse employment action nor that Liberty

No. 14-10219

Mutual interfered with her FMLA leave. Accordingly, as a matter of law, she is unable to make out a prima facie case for discrimination, harassment, interference with FMLA benefits, or retaliation. Thus, we AFFIRM summary judgment on all claims.

## II.

We review a grant of summary judgment de novo, applying the same standard as the district court. *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 344 (5th Cir. 2009). Summary judgment is appropriate where, taking the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Vuncannon v. United States*, 711 F.3d 536, 538 (5th Cir. 2013) (per curiam).

## III.

## A.

To establish a prima facie case for discrimination based on pregnancy under Title VII, the plaintiff must show, *inter alia*, that she was the subject of an adverse employment action. *See Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998), *abrogated on other grounds by Young v. United Parcel Serv., Inc.*, No. 12-1226, 2015 WL 1310745 (U.S. Mar. 25, 2015). Although Brown voluntarily resigned, a resignation may still constitute an adverse employment action "if the resignation qualifies as a constructive discharge." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). "To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Id.* (internal quotation marks omitted).

The district court found that Brown has failed to create a genuine dispute of material fact as to whether she was constructively discharged. We agree. Brown argues that Peters's exhortations to improve her sales

performance and threats to take away her sales associate constituted a constructive discharge by forcing Brown to resign.   However, informal criticisms of an employee's work rarely suffice to support a finding of constructive termination.  *See, e.g., Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650, 653 (5th Cir. 2004) (holding that plaintiff was not constructively discharged in spite of her employer "fabricating deficiencies in [her] work performance and setting an overly strict performance plan for her; threatening to fire her if she did not meet her teamwork goals; micromanaging her; excluding her from HR Department meetings; and ridiculing her in front of her coworkers").  Because having the assistance of a sales associate was contingent upon Brown's sales performance, the threat of taking the sales associate away due to Brown's lack of sales was simply a reminder of the policy to which Brown had agreed.  Despite this reprimand, Brown was never formally disciplined, and no supervisor at Liberty Mutual threatened to terminate her employment. Thus, because the uncontested facts indicate that Brown was not constructively discharged, the district court did not err in granting summary judgment to Liberty Mutual on Brown's pregnancy discrimination claim.

B.

To establish a hostile work environment claim under Title VII, a plaintiff must prove that the harassment complained of was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  In the instant case, Brown argues that she was harassed by comments about her sales numbers, threats of penalties if Brown did not meet her sales goals, and the meeting with her supervisor and other managers following the audit.  Brown's counsel acknowledged at oral argument that neither Peters nor any other employees made any derogatory comments regarding Brown's pregnancy,

No. 14-10219

other than Peters's initial observation that she had not had a pregnant employee before Brown. The types of job-related criticisms Brown complains of are unlikely to support a hostile work environment claim. *See Kang v. Bd. of Supervisors of La. State Univ.*, 75 F. App'x 974, 976-77 (5th Cir. 2003) (per curiam) (holding that receiving a poor performance evaluation, being unjustly criticized in front of peers, and being written up were not enough to make out a prima facie case of hostile work environment). More importantly, the treatment Brown experienced was not so severe as to create an abusive working environment. *See Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326-29 (5th Cir. 2004) (concluding that male coworker's conduct did not affect a term, condition, or privilege of employment where, *inter alia*, he brushed against plaintiff's breasts and behind, once slapped her behind with a newspaper, and once attempted to kiss plaintiff); *Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 872, 875 (5th Cir. 1999) (holding that employee's work environment was not rendered objectively hostile by co-worker remarking that plaintiff's "elbows are the same color as [her] nipples," repeatedly attempting to look down plaintiff's clothing, rubbing one of his hands from plaintiff's shoulder down to her wrist, and patting his lap and remarking "here's your seat" at meetings). Brown has not created a fact dispute regarding whether she was subjected to severe or pervasive harassment because of her pregnancy. Thus, Brown cannot establish a prima facie case of hostile work environment, and the district court did not err in granting summary judgment to Liberty Mutual on this claim.

## C.

As with a discrimination claim, a Title VII retaliation claim requires an adverse employment decision. *See Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). Retaliation claims may be proven by a wider range of adverse actions than discrimination claims. *See Burlington N. & Santa Fe Ry.*

No. 14-10219

*Co. v. White*, 548 U.S. 53, 67 (2006).  To support a claim for retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means [the adverse action] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 68 (internal quotation marks omitted). Brown's supervisors' actions do not meet the standard for retaliation; their allegedly retaliatory behavior was limited to counseling Brown to improve her performance, reminding Brown of the consequences of poor performance, and conducting a meeting to ask questions raised by Brown's audit.  Mere work-related reprimands are generally insufficient to rise to the level of being "materially adverse."  *See Mendoza v. Bell Helicopter*, 548 F. App'x 127, 130 (5th Cir. 2013) (per curiam) (holding that employee did not suffer an adverse employment action where he was verbally counseled at least three times for taking too long on assignments and once for riding an electric buggy at work); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (same where employee was, among other things, chastised by superiors for performance issues).  The district court properly granted summary judgment on this claim.

## D.

Lastly, to present an interference claim under the FMLA, a plaintiff must show, *inter alia*, that the defendant denied or interfered with benefits to which she was entitled under the FMLA.  29 U.S.C. § 2615(a)(1); *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).  Brown argues that by constructively discharging her, Liberty Mutual interfered with her ability to take additional FMLA leave once her child was born.  As discussed *supra*, Brown has not offered sufficient summary-judgment evidence to support a finding of constructive discharge, and therefore her interference claim fails as a matter of law.

No. 14-10219

IV.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in full.