**Reversed and Rendered and Opinion filed December 22, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00152-CV

---

## HARRIS COUNTY HOSPITAL DISTRICT, Appellant

### V.

## WILLIAM PARKER, Appellee

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-65681**

## O P I N I O N

William Parker sued his former employer, the Harris County Hospital District, complaining of unlawful discrimination under the Texas Commission on Human Rights Act ("TCHRA"). Parker alleged that the District discriminated against him on the basis of his race and sex, and then retaliated against him for opposing the allegedly discriminatory practices.

The District filed a plea to the jurisdiction, which the trial court granted in part and denied in part. The District appeals the partial denial of its plea to the

jurisdiction on Parker's race discrimination and retaliation claims, and contends that the trial court lacks subject matter jurisdiction over those claims. We reverse and render judgment dismissing Parker's claims.

## BACKGROUND

Parker, an African-American male, served as a pharmacy supervisor for the District at Settegast Health Center from 2006 until 2012.

Kim Le, a pharmacy operations manager for the District, began overseeing Settegast in 2010. Le also oversaw two other pharmacies in the District system; Mae Lo McCuen, an Asian-American woman, and Anne Fonge, an African-American woman, served as the pharmacy supervisors of those locations. Le reported to Therese Hoffman, the Director of Ambulatory Pharmacy Services for the District.

Le informed Hoffman in 2011 of her concern that Parker was not appropriately submitting time and attendance reports. Thereafter, a pharmacy resident on rotation with Hoffman requested to shadow Parker at Settegast as a learning experience. Parker emailed Hoffman on November 23, 2011, stating that he was not interested in having the resident shadow him. Parker also complained in the email of Le's "micro-management style" — alleging that Le called Parker up to 20 times a day regarding time and attendance issues — and stated that he was being "singled out." The email made no allegations regarding racial discrimination.

Parker and Hoffman met on November 29, 2011. At the meeting, Parker provided Hoffman with a document titled "Concerns with Kim Le" in which Parker outlined numerous complaints he had regarding Le's management style. Parker contended in the document that he felt "harassed" by Le's repeated phone

2

calls, but made no allegation that Le's actions were the result of racial discrimination. Parker contends that he told Hoffman that Le was treating him differently than his counterparts, and that he believed the disparate treatment was due to his race and sex. Hoffman contends that Parker never used the word "discrimination" or otherwise described any issues or conduct that could be attributed to discrimination.

During the 2011-12 time period, Parker also was in the process of opening an independent pharmacy with a former District pharmacist. Parker and the other pharmacist filed corporate documents for their limited liability company with the Secretary of State in January 2011. Parker and the other pharmacist signed a lease agreement for their pharmacy in October 2011.

Parker, Hoffman, and Le met on December 12, 2011, to discuss Parker's and Le's concerns. Parker expressed concern that Le was calling him too many times per day. Le expressed concern that Parker was not completing required daily, weekly, and monthly time and attendance reports, and that Parker was not properly flagging expiring medications. Hoffman suggested that Parker develop a proposed timeline for completion of the required reports. Parker agreed to submit a proposed timeline by December 16; however, Parker did not submit the timeline until February 27, 2012, after Le reminded him three times.

Parker received verbal counseling on February 28, 2012. The form accompanying the counseling identified the reason for counseling as poor performance, and specifically identified among other issues Parker's failure to comply with the procedures for flagging expiring medications. Parker did not express any additional concerns about Le to Hoffman between the verbal counseling and his departure from District employment in October 2012.

3

Parker requested and was granted a leave of absence under the Family and Medical Leave Act from August 23, 2012, until October 29, 2012. Parker contends that he took a leave of absence due to the stress of working in a hostile work environment.

While Parker was on medical leave, he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 28, 2012. In his discrimination charge, Parker alleged:

> I began my employment in June 2006, as a Pharmacy Supervisor. I presently supervise the Settegast Pharmacy. In January 2011, I applied for the position of Pharmacy Operations Manager, but was not selected for the position. Prior to January 2011, I applied for several positions that would have led to a promotion, but I was not selected. In 2010, Kim-Thoa Thi Le, Asian female became my Pharmacy Operations Manager. In June 2011, my performance rating was significantly lower. In November 2011, I met with Therese Hoffman, White female, Director and expressed to her that I believed that I was being treated differently than my counterparts. The other Pharmacy Supervisors under Ms. Thi Le's supervision are female (Ann Fonge, African, Mae-lo McCuen, Asian & S. Everett, East Indian). Less than a week later, Ms. Hoffman and Ms. Thi Le met to discuss my concerns, and I expressed to Ms. Thi Le that when she had a project or assignment for me to complete, that she work with deadlines instead of calling me an [sic] vast number of times during one day to discuss the same subject matter. On February 28, 2012, I was issued a verbal counseling. My 2012 performance evaluation was also significantly lower. On August 23, 2012, I was taken off work by my physician because of the hostile working environment Ms. Thi Le is subjecting me to which is causing me undue stress.
>
> I believe that I have been discriminated against because of my race, Black, sex, male and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

Along with his discrimination charge, Parker also completed an intake questionnaire and attached a statement to the questionnaire.

The attachment, filed concurrently with Parker's discrimination charge on September 28, 2012, stated as follows:

DESCRIBE WHAT ACTION THE COMPANY TOOK AGAINST YOU

I was being discriminated against and passed over for promotion because of my race and gender. After I complained to my director about this discrimination, my supervisor retaliated against me and created a hostile work environment for me, resulting in constructive discharge on October 30, 2012.

IDENTIFY WHETHER YOU BELIEVE THE ACTION WAS BECAUSE OF YOUR **RACE, SEX, NATIONAL ORIGIN, AGE, RELIGION, COLOR OR DISABILITY, AND EXPLAIN WHY**

Race, Gender and Retaliation. I am a Pharmacy Supervisor for Harris Health System. My problems began when Kim-Thoa Thi Le became my manager. She is Asian. She treated me differently because I am a black male. I was treated differently than my female counterparts, one of whom is Asian. I was passed over for several promotions for which I was the most qualified applicant. I went to my director, Therese Hoffman, to complain about this discrimination. I was then retaliated against by my manager. I was written up for poor performance, which was not true. My performance evaluations were lowered, which was unwarranted. I was scrutinized, micro-managed and constantly criticized to the point where it created a hostile work environment. I had to take a leave of absence on August 23, 2012 because of the stress. I will be constructively discharged by my employer on October 30, 2012.

Three days after filing his discrimination complaint, Parker and the other pharmacist opened their new pharmacy on October 1, 2012.

While Parker was on leave, Hoffman learned that Parker had opened an independent pharmacy. Because owning an independent pharmacy while working at the District was a violation of the District's conflict of interest policy, and because working another job while on FMLA leave was a violation of the District's FMLA policy, the District initiated a compliance investigation.

Parker tendered a resignation letter to the District via email on October 16, 2012, stating that his last day of employment with the District would be October 30, 2012. The District, having completed its investigation and confirmed that Parker was in violation of corporate policies, decided instead to terminate Parker on October 17, 2012. The District contends it was unaware of Parker's EEOC discrimination charge when it terminated Parker.

The EEOC determined the record did not support Parker's allegations of discrimination and dismissed Parker's complaint. After receiving a "right to sue" letter from the EEOC, Parker filed the underlying suit in November 2012.

The District filed a plea to the jurisdiction, which it contended could be construed as a no-evidence or traditional motion for summary judgment. The trial court granted relief in favor of the District regarding Parker's gender discrimination claim, but denied the plea to the jurisdiction as it concerned Parker's race discrimination and retaliation claims. The District filed this interlocutory appeal.

### STANDARD OF REVIEW AND APPLICABLE LAW

As a political subdivision of the state, the District is immune from suit absent an express waiver of governmental immunity. *Seamans v. Harris Cty. Hosp. Dist.*, 934 S.W.2d 393, 395 (Tex. App.—Houston [14th Dist.] 1996, no writ). The TCHRA provides a limited waiver of that immunity when a governmental unit has discriminated in any manner against any employee on the basis of age, sex, or other protected classification, or has retaliated against the employee for opposing or complaining of such discrimination. *See* Tex. Lab. Code Ann. §§ 21.051, 21.055 (Vernon 2015); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008) ("*Garcia I*") (holding that "the TCHRA clearly and unambiguously waives immunity").

6

The TCHRA's immunity waiver applies only if the plaintiff alleges a violation within the scope of the statute. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012) ("*Garcia II*"). If the plaintiff does not sufficiently plead facts that state a claim under the TCHRA, the governmental unit may challenge the pleadings with a plea to the jurisdiction. *Id.* The governmental unit may also use a plea to the jurisdiction to challenge the existence of jurisdictional facts. *Id.* at 635.

When a plea to the jurisdiction challenges the plaintiff's pleadings, we determine whether the pleadings, construed in the plaintiff's favor, allege facts sufficient to affirmatively demonstrate the trial court's jurisdiction to hear the case. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the plaintiff should be afforded the opportunity to amend the pleadings. *Id.* at 226-27. If the pleadings affirmatively negate jurisdiction, then the trial court should grant a plea to the jurisdiction and dismiss the claims with prejudice. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840, 846 (Tex. 2007).

If the plaintiff pleaded facts making out a prima facie case and the governmental unit instead challenges the existence of jurisdictional facts, we consider the relevant evidence submitted. *Miranda*, 133 S.W.3d at 227. If the governmental unit's evidence shows that the trial court lacks jurisdiction, then the plaintiff must show that there is a disputed material fact on the issue. *See id.* at 228. If a fact issue exists, the trial court should deny the plea. *Garcia II*, 372 S.W.3d at 635. But if the relevant evidence is undisputed or the plaintiff fails to

raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.*

We review a trial court's ruling on a plea to the jurisdiction *de novo*. *Miranda*, 133 S.W.3d at 228. When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the plaintiff. *See id.* We indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Id.*

Finally, because the legislature intended for state law to correlate with federal law in employment discrimination cases, we may look to analogous federal cases when applying the TCHRA. *See* Tex. Lab. Code Ann. § 21.001 (Vernon 2015); *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

ANALYSIS

The District challenges the trial court's denial of its plea to the jurisdiction regarding Parker's race discrimination and retaliation claims. In Parker's original petition below, he asserted only a general claim for "violation of the TCHRA" that tracked the language of the relevant labor code sections. Based on the statement of facts in the original petition, Parker contends that he asserted six distinct claims against the District for (1) disparate treatment by Le based on Parker's race; (2) disparate treatment by Le based on Parker's sex; (3) hostile work environment created by Le based on Parker's race; (4) hostile work environment created by Le based on Parker's sex; (5) retaliation by Le based on Parker reporting Le's

8

discriminatory conduct to Hoffman; and (6) retaliatory termination by the District due to Parker's filing of the EEOC complaint.[1]

## I.      Failure to Exhaust Administrative Remedies

The District initially challenges whether Parker timely filed his EEOC discrimination charge regarding his failure-to-promote, retaliatory termination, constructive discharge, and hostile work environment claims.

Before a plaintiff can maintain a suit for employment discrimination under the TCHRA, the plaintiff first must file a complaint of employment discrimination with the Texas Workforce Commission's civil rights division or with the EEOC. *See* Tex. Lab. Code Ann. § 21.201 (Vernon 2015); *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 503 (Tex. 2012). The complaint "must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred." Tex. Lab. Code Ann. § 21.202(a) (Vernon 2015). Section 21.202's administrative filing requirement is "a mandatory statutory requirement that must be complied with before filing suit," and claims against governmental entities that are not timely filed are jurisdictionally barred. *Chatha*, 381 S.W.3d at 514.

Each discrete incident of discrimination — such as termination or failure to promote — and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Discrete discriminatory acts are not actionable

---

[1] Parker contends that the trial court did not grant the District's plea to the jurisdiction on Parker's sex discrimination claims, but rather granted interlocutory summary judgment on those claims. In this instance, we find this to be a distinction without a difference. *See Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 390-91 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (in discrimination case against governmental entity, traditional motion for summary judgment premised on jurisdictional grounds treated as a plea to the jurisdiction for purposes of appeal). Regardless, neither party addresses the merits of the sex discrimination claims on appeal, and we therefore express no opinion on that issue.

if time-barred, and each discrete discriminatory act starts a new clock for filing charges alleging that act. *Id.* at 113. Discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period. *Id.* at 112.

## A. Failure-To-Promote Claim

As part of his disparate treatment claim, Parker asserted a claim for failure-to-promote. In Parker's EEOC discrimination charge, he alleged, in relevant part:

> In January 2011, I applied for the position of Pharmacy Operations Manager, but was not selected for the position. Prior to January 2011, I applied for several positions that would have led to a promotion, but I was not selected.

Parker did not file his EEOC charge until September 28, 2012. Any charge regarding discrete discriminatory acts occurring before April 1, 2012 — 180 days before the EEOC charge was filed — was therefore untimely. The District presented evidence with its plea to the jurisdiction that the Pharmacy Operations Manager position Parker applied for in January 2011 was filled on January 18, 2011. Because the evidence conclusively establishes that Parker filed his EEOC charge more than 180 days after he was denied promotions, the trial court erred in denying the District's plea to the jurisdiction as to Parker's failure-to-promote claim.

## B. Retaliatory Termination Claim

The District contends that it is immune from Parker's retaliatory termination claim because it was not asserted in Parker's EEOC charge. It is undisputed that Parker did not include a claim of retaliatory termination in his EEOC charge — inclusion would have been impossible because his EEOC charge was filed before he was fired — and that Parker did not amend his EEOC complaint once he was fired.

10

The District contends that Parker was required to file a separate EEOC charge or to amend his previous charge to include Parker's claim of retaliatory termination. We disagree. "[T]here is an exception to the exhaustion requirement when a retaliation claim grows out of a previously filed EEOC charge." *Lopez v. Tex. State Univ.*, 368 S.W.3d 695, 705 (Tex. App.—Austin 2012, pet. denied). In that circumstance, the plaintiff is not required to amend his charge or file a second charge with the EEOC. *See Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) ("[W]e hold that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge . . . ."); *Elgaghil v. Tarrant Cty. Junior Coll.*, 45 S.W.3d 133, 141-42 (Tex. App.—Fort Worth 2000, pet. denied) (concluding Elgaghil's claim that he was retaliated against after filing EEOC complaint was not jurisdictionally barred); *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex. App.— Houston [14th Dist.] 1999, no pet.) ("[B]ecause Thomas's retaliation claim arose due to his filing a complaint with the EEOC and TCHR, it was not necessary for Thomas to file a second complaint."). Accordingly, Parker was not required to exhaust his administrative remedies regarding his claim that he was terminated in retaliation for filing his EEOC charge.

## C.    Constructive Discharge

Constructive discharge serves as a legal substitute for the discharge element of a prima facie case of discrimination. *Hammond v. Katy Indep. Sch. Dist.*, 821 S.W.2d 174, 177 (Tex. App.—Houston [14th Dist.] 1991, no writ). A constructive discharge occurs when an employer makes conditions so intolerable that an employee reasonably feels compelled to resign. *Id.*

In his original petition, Parker contended that he had to take a leave of absence on August 23, 2012, because of stress resulting from the allegedly hostile

11

work environment, and that, "[w]hile he was out on leave, he filed a charge of discrimination and was promptly fired by [the District]." It is not apparent from Parker's original petition that he asserted constructive discharge below. Regardless, because Parker asserts on appeal that his alleged constructive discharge supports his disparate treatment, hostile work environment, and retaliatory treatment claims, we address whether he exhausted his administrative remedies with regard to constructive discharge.

Parker's EEOC discrimination charge did not identify constructive discharge in its allegations of discrimination. Instead, Parker now relies on a statement made in an attachment to an EEOC intake questionnaire Parker completed when submitting his EEOC charge. In the attachment, Parker alleged that his supervisor created a hostile work environment with the result that Parker would be "constructively discharged by [his] employer on October 30, 2012."[2]

It is unclear whether we may consider supplemental materials that are not attached to the EEOC charge in determining the scope of the charge. *See Lopez*, 368 S.W.3d at 704. *Lopez* noted that federal court decisions on this point have diverged by considering intake questionnaires (1) as a matter of course; or (2) only if (a) the facts set out in the questionnaire are a reasonable consequence of a claim set forth in the EEOC charge, and (b) the employer had actual knowledge of the contents of the questionnaire during the course of the EEOC investigation. *Id. Lopez* determined that the second approach is the proper approach, and we agree.

---

[2] There is room to discuss whether one can file an EEOC charge regarding a discrete discriminatory act that has not yet occurred, as Parker attempts to do concerning his allegation of constructive discharge. *See Buckmire v. Mem'l Hermann Healthcare Sys.*, No. H-09-2961, 2011 WL 1467649, at *3 (S.D. Tex. Apr. 18, 2011) ("Indeed, 'Title VII's anti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint.'"). In light of our resolution on other grounds, we need not address this issue further.

*See id.* at 704-05 (noting that the first approach is "over-inclusive in that it effectively treats the intake questionnaire as an independent charge instead of using it merely to *supplement* claims stated in the charge or reasonably related claims") (emphasis in original).

Here, Parker presented no evidence that the District had actual knowledge of the contents of the questionnaire or otherwise received notice from the EEOC that Parker was alleging constructive discharge. Accordingly, to the extent Parker has asserted constructive discharge, we conclude the trial court erred in denying the District's plea to the jurisdiction on that theory.

### D.    Hostile Work Environment

The District also contends that Parker's hostile work environment claim is time-barred because all of the alleged harassment detailed in the EEOC charge supporting a hostile work environment occurred more than 180 days before Parker filed his complaint.

Because a hostile work environment generally consists of multiple acts over a period of time, the EEOC charge alleging a hostile work environment must be filed within the statutory window of at least one of the acts that contributed to the hostile work environment. *See E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 398 (5th Cir. 2007). If the EEOC charge is timely filed as to at least one of the acts that contributed to the hostile work environment, then the court may consider all of the acts that are alleged to have contributed to the hostile environment, even though some of them may have taken place outside of the statutory window. *See id.*; *see also Morgan*, 536 U.S. at 117 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

13

Parker alleged in his EEOC charge: "On August 23, 2012, I was taken off work by my physician because of the hostile working environment Ms. Thi Le is subjecting me to which is causing me undue stress." Parker also alleged that discrimination was taking place between January 1, 2011, and September 28, 2012. However, the only specific act that Parker identified in his EEOC charge which occurred after April 1, 2012 — the 180-day cutoff — was that his 2012 performance evaluation was significantly lower. Parker's 2012 annual performance review occurred in June 2012.

Parker did not specifically state in his EEOC charge that he received a lower evaluation due to his race. Liberally construing his charge, however, we conclude his statement that he was being discriminated against based on his race can be read to encompass the low performance evaluation. Accordingly, Parker identified at least one alleged incident of harassment within the statutory period and his hostile work environment claim is timely. *See WC&M Enters., Inc.*, 496 F.3d at 398.

Of Parker's alleged discriminatory acts challenged by the District — failure-to-promote, retaliatory termination, constructive discharge, and hostile work environment — only the retaliatory termination and hostile work environment claims were timely identified in Parker's EEOC charge. Parker did not exhaust administrative remedies regarding his allegations of failure-to-promote and constructive discharge, and they cannot be used to support his discrimination claims. We now address Parker's racial discrimination and retaliation claims for (1) disparate treatment by Le based on Parker's race; (2) hostile work environment created by Le based on Parker's race; (3) retaliation by Le based on Parker reporting Le's discriminatory conduct to Hoffman; and (4) retaliatory termination by the District due to Parker's filing of the EEOC complaint.

14

## II.     Alleged Racial Discrimination

Parker alleges that the District engaged in racial discrimination.  There are two methods for establishing a prima facie case of discriminatory treatment.

The first method involves proving discriminatory intent through direct evidence of what the employer did and said.  *See Garcia II*, 372 S.W.3d at 634.

Because direct evidence of discrimination is a "rarity" in employment cases, an employee also may present circumstantial evidence that the employer violated the TCHRA.  *See Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 434 (Tex. App.— Houston [14th Dist.] 2002, pet. denied).  In that case, the employee must rely on the burden-shifting mechanism articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to obtain a presumption of discrimination by meeting the initial burden of establishing a prima facie case of discrimination.  *Garcia II*, 372 S.W.3d at 634.

Although the ultimate burden of persuasion remains with the employee, once the employee has made a prima facie case, the *McDonnell Douglas* mechanism shifts the burden of production to the employer to provide a legitimate, nondiscriminatory reason for the disparate treatment.  *Gonzalez v. Champion Techs., Inc.*, 384 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2012, no pet.).  If the employer presents a legitimate reason for the adverse employment action, the burden shifts back to the employee to show either (1) the stated reason was a pretext for discrimination, or (2) the employer's reason, while true, is only one reason, and discrimination was another "motivating" factor.  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *Gonzalez*, 384 S.W.3d at 466.

## A.    Disparate Treatment

To establish a prima facie case of disparate treatment race discrimination, Parker must show that he was:  (1) a member of a protected class; (2) qualified for his position; (3) subject to an adverse employment action; and (4) treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class.  *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).  The District does not dispute that Parker satisfied the first two elements, but contends that Parker cannot establish a prima facie case on the third and fourth elements.

Not every employment decision is actionable as an unlawful employment practice.  *Fort Bend Indep. Sch. Dist. v. Williams*, No. 01-13-00052-CV, 2013 WL 4779693, at *4 (Tex. App.—Houston [1st Dist.] Sept. 5, 2013, no pet.) (mem. op.).  Adverse employment decisions do not include disciplinary filings, supervisor's reprimands, poor performance reviews, hostility from fellow employees, verbal threats to fire, or criticism of the employee's work.  *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 644 (Tex. App.—Houston [1st Dist.] 2015, no pet.).  Parker must demonstrate that he suffered an "ultimate employment decision," which includes acts "such as hiring, granting leave, discharging, promoting and compensating."  *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002).

Parker points to his alleged constructive discharge as the adverse employment action required to support a claim of disparate treatment racial discrimination.  We concluded above that Parker failed to exhaust administrative remedies regarding his claim of constructive discharge by failing to include it in his EEOC charge.  Accordingly, Parker's alleged constructive discharge cannot serve as the adverse employment event to support his disparate treatment claim.

16

Nor do the individual events that Parker contends resulted in his constructive discharge themselves support a claim of disparate treatment. Parker alleges that he "was blamed for numerous pharmacy problems that were unrelated to his performance, required to improperly write up his employees, badgered about attendance and tardiness, screamed and yelled at in front of his employees, written up for poor performance, had his performance evaluation lowered, and was scrutinized, micro-managed and constantly criticized . . . ." Those are not "ultimate employment decisions" required to support the third element of a claim for race-based disparate treatment. *See id.*; *Anderson*, 458 S.W.3d at 644.

Parker's failure-to-promote claim could support a claim of disparate treatment. *See Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 364 (5th Cir. 2013) ("Failure to promote is clearly an adverse employment action."). However, we concluded above that an EEOC charge regarding such a claim was not filed within 180 days, and that claim therefore was not timely.

We conclude that Parker has not presented a prima facie case of disparate treatment discrimination because he has not asserted a timely-identified adverse employment event to support such a claim. Accordingly, we conclude that the trial court erred by denying the District's plea to the jurisdiction on Parker's race-based disparate treatment discrimination claim. Because we conclude that there was no adverse employment event to support the disparate treatment claim, we need not address the District's assertions that the other District employees were not similarly situated to Parker.

### B. Hostile Work Environment

Parker contends that he was subject to a hostile work environment due to his race. To establish a hostile work environment claim, a plaintiff must show: (1) he

17

belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *WC&M Enters., Inc.*, 496 F.3d at 399. Where the alleged harassment is committed by the plaintiff's supervisor, the plaintiff need only satisfy the first four elements. *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 354 (5th Cir. 2001), *abrogated on other grounds by Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2013).

A workplace environment is hostile when it is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 443 (5th Cir. 2012). Whether an environment is objectively hostile or abusive is determined by considering the totality of the circumstances. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Although no single factor is required, courts look to (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the complained-of conduct undermines the plaintiff's workplace competence. *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325-26 (5th Cir. 2004). Mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to create a hostile work environment. *See Harris*, 510 U.S. at 21. Conduct must be extreme to amount to a change in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

The District contends that Parker failed to establish a prima facie case of hostile work environment discrimination because he cannot establish that the alleged harassment was based on race or that the alleged harassment was sufficiently pervasive that it affected a term, condition, or privilege of Parker's employment.

Parker responds that there is direct evidence that the harassment was based on race. According to Parker's deposition testimony, Anne Fonge told Parker that Le told Fonge that "black males don't -- don't work" and that Parker was "just here to sit on the clock." Parker also responds that he "was blamed for numerous pharmacy problems that were unrelated to his performance, required to improperly write up his employees, badgered about attendance and tardiness, screamed and yelled at in front of his employees, written up for poor performance, had his performance evaluation lowered, and was scrutinized, micro-managed and constantly criticized to the point where it made him ill and ended his career with [the District]."

The conduct alleged by Parker, even if true, was not extreme and did not affect the terms and conditions of employment. *See, e.g.*, *Kang v. Bd. of Supervisors of La. State Univ.*, 75 F. App'x 974, 975-77 (5th Cir. 2003) (allegations including poor performance evaluation; being "written up" for "unacceptable conditions" in one of plaintiff's research areas; receiving a less-than-average pay raise resulting in plaintiff being the lowest-paid professor in department; and being criticized at a faculty meeting in front of plaintiff's peers were not sufficiently severe or pervasive to alter the conditions of employment and create a hostile work environment); *Cole v. Pearland Indep. Sch. Dist.*, No. 4:11-CV-00211, 2013 WL 4494423, at *8 (S.D. Tex. Mar. 21, 2013) (plaintiff's allegations that she was repeatedly harassed and abused; falsely reprimanded and

19

given bad and unfair evaluations; verbally intimidated, threatened, and spoken to in a derogatory manner by one supervisor; belittled; and had her work scrutinized "carefully" did not establish that the harassment affected a term, condition, or privilege of employment).  Accordingly, we conclude that Parker did not establish a prima facie case of race-based hostile work environment, and the trial court therefore erred in denying the District's plea to the jurisdiction on that claim.[3]

## III.    Alleged Retaliation

Parker additionally asserts that he faced retaliation from Le based on his reporting of her discriminatory conduct to Hoffman, and retaliatory termination by the District due to Parker's filing of the EEOC charge.

To establish a prima facie case of retaliation, a plaintiff is required to show that (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link connected the protected activity and the adverse employment action. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  Protected activities consist of (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. *See* Tex. Lab. Code Ann. § 21.055 (Vernon 2015); *Dias*, 214 S.W.3d at 676.  The burden then shifts to the employer to demonstrate a legitimate nondiscriminatory purpose for the adverse employment action. *Dias*, 214 S.W.3d at 676.

---

[3] Having determined that the complained-of conduct was not actionable, we need not address whether Parker made a prima facie showing that the conduct was motivated by racial animus.

## A.     Retaliatory Treatment by Le

Parker contends that Le retaliated against him after he reported Le's alleged discrimination to Hoffman.  Relying on the same alleged actions used to support his disparate treatment and hostile work environment claims, Parker contends that he was "blamed for numerous pharmacy problems that were unrelated to his performance, required to improperly write up his employees, badgered about attendance and tardiness, screamed and yelled at, written up for poor performance, had his performance evaluation lowered, and was scrutinized, micro-managed and constantly criticized."

Even assuming all of the foregoing is true, the conduct alleged does not constitute an adverse employment action.[4]  *See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (plaintiff's claims that her managers subjected her to negative treatment after she filed a complaint against her supervisor, including transferring her to an undesirable department, making her do harder work, and leaving her off the work schedule did not amount to adverse employment action); *Elgaghil*, 45 S.W.3d at 143 (plaintiff's allegations that supervisor tried to intimidate him into transferring, gave false reports that he was insubordinate, wrote him up for poor work performance, accused him of sabotaging employer's equipment, threatened him with termination, and verbally harassed plaintiff and ridiculed his accent were insufficient to demonstrate an

---

[4] Unlike the disparate treatment provisions of the TCHRA, the antiretaliation provision is not limited to conduct that constitutes "ultimate employment decisions."  *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 901 (Tex. App.—Houston [14th Dist.] 2013, no pet.).  Nevertheless, the antiretaliation provision does not protect an individual from all retaliation, but only from actions that a reasonable employee would have found materially adverse, meaning those actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers. *Id.*

21

adverse employment action).  Accordingly, Parker has failed to establish a prima facie case of retaliation by Le for Parker's report to Hoffman.

## B.      Retaliatory Termination

Parker's second retaliation claim contends that the District fired Parker in retaliation for his filing of an EEOC discrimination charge 18 days earlier.  Parker contends that "[a]n eighteen day gap constitutes a causal connection between the opposition or participation in the protected activity and the adverse employment action."

A plaintiff asserting a retaliation claim must establish that, in the absence of his protected activity, the employer's prohibited conduct would not have occurred when it did.  *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 823 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).  Parker's decision to file a complaint with the EEOC is a protected activity, and his termination qualifies as an adverse employment action.  But Parker provided no evidence to show a causal link between his EEOC filing and his termination other than temporal proximity.  *See Smith v. Albertson's Inc.*, 251 F.3d 157 (5th Cir. 2001) (per curiam) ("Other than self-serving statements and unsub-stantiated [sic] assertions, Smith offers no admissible evidence of any causal link between his termination and his filing a complaint with the EEOC.").

Assuming without deciding that Parker established a prima facie case of retaliation and shifted the burden to the District, the District provided substantial evidence to show legitimate, nonretaliatory reasons for Parker's termination. While Parker was on FMLA leave, Hoffman learned that Parker had opened an independent pharmacy.  Owning an independent pharmacy while working at the District was a violation of the District's Conflict Of Interest Policy.  Similarly, working another job while on FMLA leave was a violation of the District's FMLA

22

policy. Accordingly, the District conducted a compliance investigation and learned that Parker had opened an independent pharmacy and was working there while on FMLA leave.

Parker tendered a resignation letter to Le via email on October 16, 2012. The email stated:

> Subject:      Letter of Resignation
>
> Hello Kim,
>
> This letter will serve as my two week notice with Harris Health System.  My last day will be Oct. 30, 2012.
>
> Thanks,
>
> William Parker, MBA, RPh

The email did not mention that Parker was resigning because of discrimination.

The District, having completed its investigation and confirmed that Parker was in violation of corporate policies, decided instead to terminate Parker on October 17, 2012. Accordingly, the District presented significant legitimate, nonretaliatory reasons for Parker's termination. Moreover, the District employee who made the decision to terminate Parker[5] testified he was unaware that Parker had filed an EEOC discrimination charge when the employee made the decision to terminate Parker; thus, the District also presented evidence that the termination was made without knowledge of Parker's charge of discrimination. *See E.E.O.C. v. J.H. Walker, Inc.*, No. H-05-2232, 2007 WL 172626, at *22 (S.D. Tex. Jan. 18, 2007) (where employee tendered resignation after alleged complaint of discrimination but was immediately terminated instead, court concluded, "There is no evidence in the record to support an inference that Walker knew of Ziegler's complaints to Grahmann.  Walker testified that he had no knowledge of Ziegler's

_____

[5] Parker was terminated by Ryan Roux, the District's Chief Pharmacy Officer.  Neither Hoffman nor Le was involved in the decision to terminate Parker.

complaints while she worked there. . . . The record does not support a causal connection between Ziegler's alleged complaints to Grahmann about discrimination or harassment and Walker's decision to accept her resignation immediately.").

Accordingly, the burden shifted back to Parker to show either (1) the stated reason was a pretext for discrimination, or (2) the employer's reason, while true, is only one reason, and discrimination was another "motivating" factor. *Rachid*, 376 F.3d at 312; *Gonzalez*, 384 S.W.3d at 466. Parker has not disputed that he opened an independent pharmacy while working at the District and that he worked at his pharmacy while on FMLA leave, in violation of the District policies. Other than the temporal proximity of his termination to his EEOC charge, Parker points to no other evidence that the District's reasons for his termination were a pretext for discrimination or that discrimination was another "motivating" factor. Temporal proximity alone is insufficient to prove a causal link connecting the protected activity and the adverse employment action. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *see also Crutcher v. Dallas Indep. Sch. Dist.*, 410 S.W.3d 487, 496 (Tex. App.—Dallas 2013, no pet.) ("Temporal proximity may be evidence of a causal connection only when a person with input into the employment decision was aware of the protected activity."). Accordingly, we conclude that Parker failed to establish a discriminatory or retaliatory reason for his termination by the District, and the trial court therefore erred in denying the District's plea to the jurisdiction on that claim.

## CONCLUSION

We conclude Parker failed to exhaust administrative remedies with respect to his claims for failure-to-promote and constructive discharge. We further conclude Parker failed to establish a prima facie case of disparate treatment

24

discrimination, race-based hostile work environment, or retaliatory treatment by his supervisor.  Finally, we conclude that Parker failed to demonstrate that the District terminated him as retaliation for filing his EEOC charge.  Accordingly, we reverse the portion of the trial court's order denying the District's plea to the jurisdiction on Parker's racial discrimination and retaliation claims, and we render judgment dismissing Parker's claims with prejudice.


/s/    William J. Boyce
             Justice


Panel consists of Justices Boyce, Busby, and Brown.