**Reversed and Remanded and Memorandum Opinion filed May 16, 2024**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-23-00143-CV

### SUSAN CLIFTON, Appellant

### V.

### THE CITY OF PASADENA, Appellee

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-84235**

## MEMORANDUM OPINION

Appellant Susan Clifton filed suit against the City of Pasadena alleging that appellee, the City of Pasadena,[1] discriminated against her and also retaliated

---

[1] Clifton named both the City of Pasadena and the Pasadena Police Department as defendants in her First Amended Petition. The Pasadena Police Department, however, has no separate legal existence and is not subject to suit. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991); *Cronen v. Houston Park Police*, No. B14-91-00407-CV, 1992 WL 99533 at *2 (Tex. App.—Houston [14th Dist.] May 14, 1992, no writ) (not designated for publication) (stating that the Park Police was a department of the City of Houston and was not a separate entity subject to suit).

against her when acting Pasadena Police Chief Al Espinoza demoted her from assistant chief back to the rank of lieutenant. Pasadena filed a plea to the jurisdiction, which the trial court granted. Because Clifton produced sufficient evidence to create a fact issue on her discrimination and retaliation claims brought pursuant to the Texas Commission on Human Rights Act (TCHRA), we reverse and remand to the trial court for further proceedings. *See* Tex. Lab. Code §§ 21.051; 21.055.

## BACKGROUND

Clifton became the first female assistant chief of police in the Pasadena Police Department in 2013. She was one of three assistant chiefs in the department. In early 2017, the night-shift lieutenant notified Clifton about a field-training feedback form prepared by Probationary Officer Shawna Brown. The feedback form addressed Officer Brown's experience with her field-training officer (FTO), Steven Espinoza. In her feedback, Officer Brown stated that she did not believe that FTO Espinoza should be an FTO because, among other things, he made inappropriate sexual comments to her during her training. Clifton believed that Officer Brown's feedback reported that FTO Espinoza had sexually harassed Officer Brown during her field training. Based on this belief, Clifton made the decision to report the allegations to the chief of the department at the time. Clifton subsequently filled out a Record of Complaint to initiate an internal affairs investigation on FTO Espinoza. Clifton was listed as the complainant to prevent any stigma from attaching to Officer Brown as a result of the complaint. Once Officer Brown learned of the complaint, she told Clifton that she did not want to file a complaint. Clifton told Officer Brown that she did not have a choice and that she was listed as a witness, not the complainant.

Sergeant Wille conducted the ensuing internal affairs investigation. During

2

the investigation, FTO Espinoza admitted making some of the alleged comments. At the completion of the investigation, Police Chief Thayer determined that FTO Espinoza's actions warranted "a three (3) day suspension from the Pasadena Police Department." FTO Espinoza waived his right to appeal and accepted the three-day suspension without pay on March 31, 2017.

FTO Espinoza's father was Lieutenant Al Espinoza, also of the Pasadena Police Department. For reasons not revealed by the record, Sergeant Wille talked to Lieutenant Espinoza about the investigation into his son's conduct as an FTO. According to Sergeant Wille, Lieutenant Espinoza took exception to the fact that the allegations had gone to internal affairs. Lieutenant Espinoza expressed his belief that the allegations should have been handled at the shift level because it was just "cops being cops." Sergeant Wille informed Clifton about Lieutenant Espinoza's response to the investigation.

In mid-June 2017, newly-elected Mayor Jeff Wagner told Lieutenant Espinoza that he would be promoted to replace the retiring Chief Thayer. On June 23, 2017, Lieutenant Espinoza met with Clifton in her office. Lieutenant Espinoza told Clifton that he was going to demote her back to the rank of lieutenant. Lieutenant Espinoza told Clifton that it had nothing to do with her abilities or skills, but he "just felt more comfortable with starting [his] own team." Additionally, Lieutenant Espinoza told Clifton that when he got selected to be the new chief, a lot of pressure was placed on him to make a "sweeping move" with the assistant chief positions, to "just change everything."

On July 1, 2017, Lieutenant Espinoza became the acting chief of the Pasadena Police Department. As an acting chief, Espinoza did not have the authority to make personnel decisions. On July 3, 2017, Acting Chief Espinoza signed the administrative form demoting Clifton to lieutenant. Randy Perry, the

3

director of Pasadena's Human Relations (HR) Department and its Civil Service Director, signed the same day. Mayor Wagner signed on July 7, 2017. Acting Chief Espinoza was not confirmed as the Chief of Police until the next meeting of the Pasadena City Council. *See* Tex. Loc. Gov't Code § 143.013(a)(1) (stating that a department head is appointed by a municipality's chief executive and confirmed by the municipality's governing body). Clifton, as a result of her demotion, experienced a reduction in her authority as well as a pay decrease. Despite the alleged pressure on Chief Espinoza to make sweeping moves with the assistant chiefs, Clifton, the only female assistant chief, was the only assistant chief involuntarily demoted by Chief Espinoza.[2] In addition, according to Josh Bruegger, the man who eventually replaced Al Espinoza as Chief of the Pasadena Police Department, Clifton was the only assistant chief he was aware of who had ever been involuntarily demoted from assistant chief back to lieutenant. Chief Espinoza selected a male lieutenant to replace Clifton.

Clifton initiated a complaint via an email to Randy Perry, the director of Pasadena's HR department, the same month that she was demoted. Clifton asserted that her demotion was based on her sex and also in retaliation for making the complaint against Officer Espinoza, Chief Espinoza's son. Perry received and opened the complaint email but did not respond to Clifton's claim. Clifton followed up on her initial complaint and asked when she would receive a reply. Perry received this follow-up email as well but he did not respond. In addition, other than talking to Chief Espinoza, Perry did not investigate Clifton's complaint. Perry, however, did generate a draft letter regarding Clifton's complaint, but he never sent it to Clifton, or to anyone else. When asked during his deposition

---

[2] Chief Espinoza testified during his deposition that he planned to keep another assistant chief, Mike Jackson, for only six months and then replace him. Jackson instead opted to immediately accept a voluntary demotion to lieutenant.

4

whether he had referred Clifton's complaint to the Pasadena Civil Service Commission, he testified "I don't know."

While Officer Brown initially did not want to file a complaint regarding her treatment as a probationary officer, she did eventually file a complaint about her treatment by the Pasadena Police Department. Perry admitted during his deposition that he did not investigate Officer Brown's retaliation complaint once it was filed. Perry explained that he did not investigate Brown's retaliation complaint because she had already been terminated for not successfully completing her period as a probationary police officer.

According to Chief Bruegger, Perry had retired from his Pasadena employment at the time of Chief Bruegger's deposition. When asked if it had ever been alleged that Perry violated department policies, Chief Bruegger testified that some of Perry's responses to grievances made to his department had not been handled in compliance with Pasadena's policy. Chief Bruegger explained that Pasadena's policy was to investigate any grievances made which, at the minimum, should include interviewing the person making the allegation and the subject of the allegation. Chief Bruegger testified that it was his understanding Perry never responded to Clifton's investigation.

Clifton filed a charge of discrimination with both the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission Civil Rights Division (TWC). Clifton received a "right to sue letter." Clifton subsequently filed suit against Pasadena asserting causes of action exclusively under the TCHRA. Clifton alleged that Pasadena discriminated against her on the basis of her sex in violation of Section 21.051 of the Texas Labor Code. *See* Tex. Lab. Code § 21.051 (providing that an employer commits an unlawful employment practice if it "fails or refuses to hire an individual, discharges an individual, or

discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment"). Clifton also alleged that Pasadena, when it demoted her back to lieutenant, retaliated against her for filing the complaint against Officer Espinoza in violation of Section 21.055 of the Texas Labor Code. *See id.* at § 21.055 (providing that an employer commits an unlawful employment practice if it retaliates or discriminates against a person who opposes a discriminatory practice, makes or files a charge, or files a complaint).

Pasadena filed a plea to the jurisdiction asserting that the trial court did not have subject matter jurisdiction because Clifton could not demonstrate a prima facie case of retaliation nor of gender discrimination. After much delay, the trial court granted Pasadena's plea and dismissed Clifton's lawsuit without prejudice. This appeal followed.

## ANALYSIS

Clifton raises two issues challenging the trial court's dismissal of her claims. We address Clifton's second issue first.

## I. Standard of review

As a governmental unit, Pasadena is immune from suit absent an express waiver of governmental immunity. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018) (stating governmental units are immune from suit unless the state consents). The TCHRA provides a limited waiver of immunity when a governmental unit has discriminated in any manner against an employee on the basis of race, gender, disability, or other protected classification, or has retaliated against the employee for opposing or complaining of such discrimination. *Harris Cnty. Hosp. Dist. v. Parker*, 484 S.W.3d 182, 191 (Tex.

6

App.—Houston [14th Dist.] 2015, no pet.). The TCHRA's immunity waiver applies only if the plaintiff alleges a violation within the scope of the statute. *Clark*, 544 S.W.3d at 770; *Parker*, 484 S.W.3d at 191. If the plaintiff does not sufficiently plead facts that state a claim under the TCHRA, the governmental unit may challenge the pleadings with a plea to the jurisdiction. *Parker*, 484 S.W.3d at 191. The governmental unit may also use a plea to the jurisdiction to challenge the existence of jurisdictional facts. *Id.*

Immunity from suit may be asserted through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment. *Clark*, 544 S.W.3d at 770. A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both. *Id.* When a jurisdictional plea challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction. *Id.* If, however, the plea challenges the existence of jurisdictional facts, we move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim. *Id.*

Here, Pasadena's plea challenged the existence of jurisdictional facts with supporting evidence. In that situation, the standard mirrors that of a traditional summary judgment. *Id.* If the plaintiff's factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal, the plaintiff must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction. *Id.* When the evidence submitted to support the plea implicates the merits of the case, we take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Id.* In doing so, however, we cannot disregard evidence necessary to show context, and we cannot

7

disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not. *Id.*

To resolve claims of discrimination at this stage of a case, Texas courts apply the burden-shifting analysis first announced by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Under this framework, the plaintiff first has the burden of presenting a prima facie case of discrimination. *Metropolitan Trans. Auth. of Harris Cnty. v. Douglas*, 651 S.W.3d 122, 127 (Tex. App.—Houston [14th Dist.] 2021, no pet.). The precise elements of a prima facie case vary depending on the circumstances but the plaintiff's burden at this stage is not onerous. *Id.* Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the employment action. *Id.* If the defendant articulates a legitimate, nondiscriminatory reason for its decision, the burden shifts back to the plaintiff to show either that the stated reason was a pretext for discrimination or that, even if the reason was true, discrimination was also a motivating factor for the adverse employment action. *Id.* The *McDonnell Douglas* framework applies to jurisdictional issues such as those raised in this appeal, both in the discrimination and the retaliation contexts. *Id.*

We review a trial court's disposition of a jurisdictional plea de novo. *Suarez v. City of Texas City*, 465 S.W.3d 623, 632 (Tex. 2015).

## II.    Appellant fulfilled her obligation to exhaust administrative remedies.

The trial court granted Pasadena's plea to the jurisdiction and dismissed Clifton's lawsuit without specifying a reason for doing so. One of Pasadena's arguments asserted in its plea to the jurisdiction was that the trial court did not have subject matter jurisdiction because Clifton failed to exhaust her administrative remedies. *See Specialty Retailers, Inc. v. DeMoranville*, 933

S.W.2d 490, 492–93 (Tex. 1996) (per curiam) (providing that exhaustion of administrative remedies is a subject-matter jurisdictional prerequisite to suing for unlawful employment practices). "To exhaust administrative remedies under Chapter 21, a plaintiff must (1) file a complaint with the TWC or the EEOC within 180 days of the alleged discriminatory act; (2) allow the agency 180 days to dismiss or resolve the complaint; and (3) sue in the district court within 60 days of receiving a right-to-sue letter from the agency and no later than two years after filing the complaint." *Galveston Cnty. v. Cooley*, No. 14-23-00109-CV, 2024 WL 564191, at *4 (Tex. App.—Houston [14th Dist.] Feb. 13, 2024, no pet.) (mem. op.) (citing Tex. Lab. Code §§ 21.202, .208, .254, .256). The timely filing of a complaint is mandatory, and when the defendant is a governmental entity, the failure to timely file is a jurisdictional bar to suit. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 514 (Tex. 2012).

In the trial court Pasadena cited a single section of the Local Government Code, Section 143.054, in support of its argument that Clifton did not exhaust her administrative remedies prior to filing suit. We conclude Section 143.054 does not support Pasadena's jurisdictional argument. Section 143.054, entitled "Demotions," creates a procedure for the head of a police department to initiate the involuntary demotion of a police officer. *See* Tex. Loc. Gov't Code § 143.054. The statute provides that if the head of a police department wants to involuntarily demote a police officer, "the department head may recommend in writing to the commission that the commission demote the . . . police officer." *Id.* The statute then provides that "if the commission believes probable cause exists for ordering the demotion, the commission shall give the . . . police officer written notice to appear before the commission for a public hearing . . . ." *Id.* The statute further provides that the police officer is entitled to a public hearing and the commission

9

may not demote the police officer without the public hearing. *Id.* Pasadena provided no evidence that Chief Espinoza followed this procedure when he decided to demote Clifton. Further, the statute says nothing about a police officer being required to initiate a hearing procedure after being demoted outside this statutory framework.

On appeal, Pasadena cites a different section of the Local Government Code, Section 143.102(e), in support of its failure to exhaust administrative remedies argument. While it is true this section provides that a police chief may remove an assistant police chief without cause, the statute applies only to a municipality with a population of 1.5 million or more people, which does not include Pasadena.[3] *See* Tex. Loc. Gov't Code § 143.101(a) ("Except as otherwise provided, this subchapter [G] applies only to a municipality with a population of 1.5 million or more."); § 143.102 (included within Subchapter G of Chapter 143). It therefore does not support Pasadena's failure to exhaust administrative remedies argument.

Because it is undisputed Clifton timely filed her charge of discrimination with the EEOC and the TWC, received a right to sue letter, and timely filed suit thereafter, we conclude she exhausted her administrative remedies. We sustain Clifton's second issue on appeal.

## II. The trial court erred when it dismissed Clifton's retaliation claim.

Clifton argues in her first issue that the trial court erred when it dismissed her retaliation claim. We agree.

The TCHRA makes retaliation for opposing a discriminatory practice actionable. *See* Tex. Lab. Code § 21.055; *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010). "To establish a prima facie case of retaliation, an

---

[3] The United States Census website provides that Pasadena's 2022 estimated population was 147,662. *See* www.census.gov/quickfacts/fact/table/pasadenacitytexas/PST045222.

10

employee must show: (1) she engaged in an activity protected by the TCHRA, (2) she experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018). A retaliation claim may be actionable even if a discrimination claim is not. *Id.* at 781. The TCHRA provides that an employer commits an unlawful employment practice if it retaliates or discriminates against a person who "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code § 21.055; *Navy v. College of the Mainland*, 407 S.W.3d 893, 900 (Tex. App.— Houston [14th Dist.] 2013, no pet.). "Unlike a discrimination claim, a retaliation claim focuses on the employer's response to an employee's protected activity, . . . rather than on the validity of the underlying discrimination complaint." *Texas Dep't State Health Servs. v. Resendiz*, 642 S.W.3d 163, 180 (Tex. App.—El Paso 2021, no pet.). Finally, Clifton is not required to establish that her filing of the complaint regarding Officer Espinoza's treatment of Officer Brown was the sole cause of her demotion. *River Oaks L-M, Inc. v. Vinton-Duarte*, 469 S.W.3d 213, 226 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

In the trial court, Pasadena argued that Clifton failed to meet her initial burden to show a prima facie case of retaliation because she did not engage in a protected activity nor establish the causal link between the protected activity and the adverse action. On appeal, Pasadena relies on numerous Fifth Circuit opinions addressing Title VII claims.[4] *See e.g. EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235,

---

[4] Section 2000e-3 of Title VII provides that it is an unlawful employment practice for an employer to discriminate against an employee for opposing "any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

239 (5th Cir. 2016) (dividing Title VII retaliation claims into opposition clause and participation clause categories). In addition, Pasadena argues that the trial court properly dismissed Clifton's suit because Clifton was not able to identify direct evidence establishing that Chief Espinoza's non-discriminatory reason for demoting Clifton, his desire to form his own command staff, was pretextual.

We turn first to whether Clifton established the challenged elements of a prima facie case of retaliation. Like Title VII, the Texas Labor Code provides that a protected activity includes opposing a discriminatory practice, making or filing a charge, filing a complaint, or testifying, assisting, or participating in an investigation, proceeding, or a hearing. *See* Tex. Lab. Code § 21.055. Because the Texas Supreme Court has directed that federal cases applying Title VII "guide" Texas appellate courts' application of the TCHRA, we will use the opposition clause and participation clause categories here. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012).

Citing *EEOC v. Rite Way Servs., Inc.*, Pasadena argues that the participation clause does not apply to a purely internal investigation such as the one at issue here that was not connected with a formal EEOC proceeding. 819 F.3d at 239, n.2. Because it is undisputed that there had not been a complaint filed with the EEOC or the TWC at the time Clifton initiated her complaint regarding FTO Espinoza's sexually harassing Officer Brown, we agree. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) ("In the instant case, the 'participation clause' is irrelevant because Byers's did not file a charge with the EEOC until *after* the alleged retaliatory discharge took place.") (emphasis in original).

Turning to the opposition clause, we conclude that Clifton established a prima facie case because she opposed what she reasonably believed was a discriminatory practice when she initiated a complaint regarding FTO Espinoza's

12

treatment of Officer Brown. *See Rite Way Servs., Inc.*, 819 F.3d at 240 (pointing out that a reasonable belief that an employment practice was unlawful is sufficient under the opposition clause); *Warrick v. Motiva Enter., L.L.C.*, No. 14-13-00938-CV, 2014 WL 7405645, at \*7 (Tex. App.—Houston [14th Dist.] 2014, Dec. 30, 2014, no pet.) ("The employee must offer evidence that she had a reasonable belief that the employer's opposed practice was unlawful"). Here, Clifton opposed a discriminatory practice when she made the decision to go to the then chief of police with her belief that Officer Brown had been subjected to sexual harassment by FTO Espinoza. The fact that Chief Thayer may have subsequently ordered Clifton to file an internal affairs complaint to initiate an internal affairs investigation does not change the fact that Clifton initially opposed FTO Espinoza's actions which ultimately resulted in FTO Espinoza being suspended without pay for three days. *See Jenkins v. Orkin Exterminating Co.*, 646 F.Supp. 1274, 1277–78 (E. D. Tex. 1986) (holding coworker's report of sexual harassment of colleague to corporate headquarters, calling for investigation and resulting in his termination, constituted protected opposition). The fact this was an internal complaint does not change this analysis because the Supreme Court of Texas has concluded that an internal grievance implicates the anti-retaliation provisions of the Texas Labor Code. *See City of Waco v. Lopez*, 259 S.W.3d 147, 151 (Tex. 2008) ("An internal grievance alleging conduct that is actually prohibited by the CHRA reasonably equates to opposition to discriminatory conduct 'under' the CHRA, regardless of whether a formal CHRA complaint has been filed").

We turn next to whether Clifton established a causal link between her filing the complaint against Chief Espinoza's son and her later demotion. In arguing that there is no evidence of such a link, Pasadena liberally relies on Chief Espinoza's self-serving testimony explaining his reasons for demoting Clifton and his denial

that Clifton's gender and role in his son's suspension played any part in the demotion. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374 379 (5th Cir. 2010) (stating that terminated employee's "self-serving statements that he did not commit sexual harassment are insufficient to create a triable issue of fact"); *Hertz Equip. Rental Corp. v. Barousse*, 365 S.W.3d 46, 55 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("To support this contention, Hertz relies solely on Newman's own testimony that he did not make the decision to terminate Barousse's employment or eliminate his position. The trial court was not required to credit Newman's self-serving denial, particularly in light of Newman's equivocal testimony about the nature of his involvement in meetings concerning the layoff."). However, even if Chief Espinoza's self-serving denials were competent evidence, it is well-recognized that "smoking gun" direct evidence of retaliation is rare and therefore plaintiffs such as Clifton can rely on circumstantial evidence, and the reasonable inferences therefrom, to establish a prima facie case. *See Clark*, 544 S.W.3d at 782 ("Because smoking guns are hard to come by, the three-part *McDonnell Douglas* burden-shifting framework enables an employee to establish discrimination with circumstantial evidence."); *Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 312 (Tex. 2015) (stating that a plaintiff is not required to prove her claim through only direct evidence). Such circumstantial evidence may include: (1) the employer's failure to follow its usual policy and procedures in carrying out the challenged employment actions; (2) an employer's discriminatory treatment of the employee in comparison with similarly situated employees; (3) knowledge of the discrimination charge or suit by those making the adverse employment decision; (4) evidence that the employer's stated reasons for the adverse action were false; and (5) the temporal proximity between the employee's conduct and the employer's adverse employment action. *Adeshile v. Metropolitan Transit Auth. of Harris Cnty.*, No. 14-12-00980-CV, 2014 WL 3734140, at *4

14

(Tex. App.—Houston [14th Dist.] Jan. 16, 2014, no pet.) (mem. op.); *see River Oaks L-M, Inc.*, 469 S.W.3d at 226 (listing possible types of circumstantial evidence of causal link).

We therefore examine the evidence Clifton contends supports the existence of a causal link. This evidence includes Pasadena's failure to follow its normal procedures when Acting Chief Espinoza demoted Clifton. *See Clark*, 544 S.W.3d at 823 ("This evidence is significant not only because it is evidence of the close timing and retaliatory nature of the District's actions, but also because this Court has held that an employer's failure to adhere to relevant established company policies is probative in a retaliation suit."). As already pointed out above, Acting Chief Espinoza did not follow the civil service procedures for demoting police officers. Instead, he unilaterally demoted Clifton days after he became acting chief and before he was confirmed by the Pasadena City Council. This action also exceeded Pasadena's normal procedures because, as Chief Bruegger explained, acting chiefs do not have the authority to make employment decisions.

Clifton also presented evidence that she was treated differently compared to similarly situated employees. When Mayor Wagner appointed Lieutenant Espinoza acting chief, Pasadena had three assistant chiefs, Bruegger, Jackson, and Clifton. Clifton was the only female assistant chief. Acting Chief Espinoza decided to keep Bruegger on as an assistant chief and planned to keep Jackson as an assistant chief for six months out of "pure respect" before he would be demoted. Thus, Clifton, the only female assistant chief, was the only assistant chief Acting Chief Espinoza chose to immediately demote back to lieutenant. In addition, the evidence established that Clifton, the first and only female assistant chief in the Pasadena Police Department's history, was also the first assistant chief to be involuntarily demoted back to lieutenant during her nearly thirty years on the force.

The evidence also established that Acting Chief Espinoza knew about Clifton's complaint regarding his son's actions as Officer Brown's training officer. This evidence includes Chief Bruegger's deposition testimony that he learned from Sergeant Wille, the internal affairs officer handling Clifton's complaint, that then Lieutenant Espinoza "took exception to the fact that [the complaint] had gone to internal affairs and he thought it could have been handled on the shift." Acting Chief Espinoza himself admitted his knowledge of Clifton's complaint when he denied stating that the complaint just involved "cops being cops."

We turn next to whether Clifton met her burden to make a prima facie showing that Chief Espinoza's stated reasons for demoting Clifton were false. The initial reason then Lieutenant Espinoza gave Clifton for her demotion was that he was receiving pressure from the incoming mayor to make a "sweeping move" with all three assistant chiefs. If this was indeed his reason, it would follow that Acting Chief Espinoza would have immediately demoted all three assistant chiefs. As mentioned above, he involuntarily demoted only one, Clifton. In its position statement to the EEOC, Pasadena stated the reason for Clifton's demotion was Chief Espinoza's personal preference. During his deposition Chief Espinoza, by then retired, directly contradicted the reason for the demotion that he had given Clifton when he testified that the decision to demote Clifton was a personal decision, it was his decision alone, and no one else had input into the decision. Perry mentioned another reason for Chief Espinoza demoting Clifton. According to Perry, Chief Espinoza "had long thought that [Clifton] lacked the skills to serve at a high level in his incoming administration." Because the reasons Pasadena and Chief Espinoza have given for Clifton's demotion have varied over time, we conclude that Clifton met her initial burden to make a prima facie showing that the stated reasons for demoting her were false. *See Univ. of Tex. Sw. Med. Ctr. v.*

16

*Vitetta*, No. 05-19-00105-CV, 2020 WL 5757393, at *21 (Tex. App.—Dallas Sept. 28, 2020, no pet.) (mem. op.) ("Doubt in the employer's asserted reason can be established in a number of ways, including by proof that the employer provided shifting or different reasons for its action at different times.").

Finally, the temporal proximity between Clifton's complaint regarding Officer Espinoza and her demotion back to lieutenant also supports Clifton's prima facie case. Here, Clifton filed her complaint regarding FTO Espinoza's treatment of Officer Brown in February 2017. FTO Espinoza agreed to his three-day suspension on March 31, 2017. The next relevant event occurred on June 23, 2017, mere days after he found out that he would be the new police chief with the authority to make employment decisions, when then Lieutenant Espinoza told Clifton that he would be demoting her back to lieutenant. *See Univ. of Tex. at El Paso v. Esparza*, 510 S.W.3d 147, 159 (Tex. App.—El Paso 2016, no pet.) ("But it also is true that there is no hard-and-fast rule that any specified amount of time is too removed for an inference of causation. Especially where a defendant retaliates at the first opportunity that is presented, a plaintiff will not be foreclosed from making out a prima facie case despite a substantial gap in time.") (internal quotations omitted). The formal demotion occurred on July 3, 2017. The approximate three-month period between Officer Espinoza's suspension and Clifton being told that she would be demoted supports an inference that the two events were connected. *See Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that time lapse of up to four months was sufficient to satisfy retaliatory causal connection for summary judgment purposes); *River Oaks L-M, Inc.*, 469 S.W.3d at 228 (stating that "a gap of slightly over three months" from the initial report of sexual harassment to termination was a "sufficiently close temporal proximity").

While not mentioned above in the listing of possible types of circumstantial evidence relevant to the existence of a causal link between Clifton's report of sexual harassment against Officer Brown and her demotion to lieutenant, the close family relationship between Al Espinoza and Steven Espinoza cannot be ignored. *See Rite Way Serv., Inc.*, 819 F.3d at 238–39, 345 (finding fact issue on retaliatory animus after noting male harasser's brother-in-law replaced him as plaintiff's supervisor and quickly issued plaintiff three written warnings and two oral warnings for poor job performance that resulted in plaintiff's termination).

Based on the above evidence, we conclude Clifton produced sufficient circumstantial evidence of a causal link to meet the low threshold to establish a prima facie case of retaliation.

In the trial court Pasadena asserted that Chief Espinoza had a legitimate, non-retaliatory reason for demoting Clifton, his personal decision so that he could assemble a command staff that he trusted. Based on this subjective reason, Pasadena argues that the burden then passed back to Clifton to put forward evidence that the proffered legitimate reason offered by Pasadena was not the actual reason but merely a pretext. *Douglas*, 651 S.W.3d at 127. In this situation, Clifton must show either that the stated reason was a pretext, or that, even if the reason was true, retaliation was also a motivating factor for the adverse employment action. *Id.*

When giving a non-discriminatory reason for an employment action, an employer can provide a subjective reason. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 616 (5th Cir., 2007). "Such a reason will satisfy the employer's burden of production, however, only if the employer articulates a clear and reasonably specific basis for its subjective assessment." *Id.* Here, Pasadena asserts that Chief Espinoza "had long thought that [Clifton] lacked the skills to serve at a high level

18

in his incoming administration." Pasadena, however, offers no specifics to sustain Chief Espinoza's belief that Clifton lacked the skills to serve as an assistant chief. Pasadena itself does point to Chief Espinoza's contrary statement to Clifton that he had "no doubt about [her] professionalism, [her] skills or anything like that." There is evidence that Chief Espinoza recognized that Assistant Chief Jackson needed to be replaced. Then Lieutenant Espinoza told Clifton that Jackson was "going to be gone," but he was keeping him for six more months as an assistant chief out of "pure respect." Yet, Chief Espinoza was not willing to retain the only female assistant chief, the assistant chief who had reported his son for sexual harassment, even though he had no doubt about her professionalism or skills. We conclude that even if Pasadena's proffered subjective reason for removing Clifton met its burden of production, Clifton met her ensuing burden to produce sufficient evidence at this stage of the proceedings to show that Pasadena's stated reason was a pretext for retaliation, or even if it was true, that retaliation was also a motivating factor for her demotion.

Based on the above, we conclude that the trial court erred when it dismissed Clifton's opposition clause retaliation cause of action.

## III. The trial court erred when it dismissed Clifton's gender discrimination claim.

A prima facie case of sex or gender discrimination under the TCHRA required Clifton to present evidence that she: (1) was a member of a protected class (that is, a female); (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was either (a) replaced by a male or (b) otherwise treated less favorably than similarly situated employees. *Ysleta v. Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam). Employees are similarly situated if their circumstances are comparable in all material respects,

19

including similar standards, supervisors, and conduct. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 584 (Tex. 2017).

The evidence detailed at length above establishes that Clifton established her prima facie case of sex or gender discrimination. This includes the only element challenged by Pasadena: that Clifton was treated less favorably than the other two assistant chiefs, who were both male. Clifton produced evidence that Chief Espinoza fully retained one assistant chief and offered the other male assistant chief an opportunity to retain his position for six months. He offered Clifton, the only female, neither. The fact that Jackson declined Chief Espinoza's offer of six more months and voluntarily accepted demotion back to lieutenant does not change the fact that he, and not Clifton, was presented with that choice.

The same evidence recounted above also meets Clifton's burden to establish that Chief Espinoza's reason for demoting Clifton—his personal decision to build a command staff he was most comfortable with—was a pretext for sex or gender discrimination, or, at the least was a motivating factor. For example, Chief Espinoza decided to retain an assistant chief he admitted needed to be replaced out of "pure respect," yet he failed to offer such a sign of respect to the only female assistant chief, who he believed had the skills and professionalism to do the job.

If additional evidence was necessary, Clifton offered evidence detailing Chief Espinoza's handling of other events involving females. For example, Chief Espinoza graphically stated that he would not hire a female for a particular job within the department because she would engage in sexual relations with "half the night shift." In addition, when Chief Espinoza learned about Officer Brown's formal complaint against the Pasadena Police Department, rather than order an investigation, he stated that he would not let Officer Brown blackmail him and that he would fire her himself. Brown was terminated a short time later.

Based on this evidence, we conclude that Clifton met her burden sufficiently to survive Pasadena's plea to the jurisdiction on her sex or gender discrimination claim and the trial court erred when it dismissed this cause of action. Because we conclude that Clifton met her burden on both of her alleged causes of action, we sustain Clifton's first issue.

## CONCLUSION

Having sustained both of Clifton's issues on appeal, we reverse the trial court's order dismissing Clifton's suit and remand to the trial court for further proceedings.


/s/    Jerry Zimmerer
Justice


Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.